OPINION

Per Curiam:

The Washoe County District Attorney charged respondent, Jimmy Winston Steward, and three other persons by way of information with several drug offenses in connection with a police raid on a home in Lemmon Valley near Reno. Following a preliminary hearing, the justice’s court ordered Steward to stand trial on two counts of possession of a controlled substance. See NRS 453.3385, 453.336. The district court subsequently granted Steward’s pretrial petition for a writ of habeas corpus and dismissed the charges against him. We conclude that the district court committed substantial error when it concluded that there was insufficient evidence to bind Steward over for trial.

Facts

The justice’s court conducted a preliminary hearing on the charges against Steward on December 30 and 31, 1992. A confidential informant for the federal Drug Enforcement Agency *833 (“DEA”) testified at the hearing that on the morning of December 9, 1992, Steward informed her that he had recently acquired a methamphetamine lab from a person in Washoe Valley. Steward also told the informant that the lab was at his apartment in Reno, but that he planned to transport it to a house belonging to a man named Chris later that day between 4:30 and 5:00 p.m.
Upon learning this information, the informant contacted DEA agent Peter Johnson and informed him of Steward’s intentions. The informant then met Steward at this apartment pursuant to agent Johnson’s request. Steward allowed the informant to inspect the lab which was stored in the back of a Chevrolet Blazer parked in front of Steward’s apartment. The informant observed that the Blazer contained boxes of glassware and chemicals typical of the kind used to manufacture methamphetamine.
After inspecting the glassware, the informant told Steward that she needed to go to a nearby store to buy some cigarettes. The informant met agent Johnson at the store and reported what she had seen. Agent Johnson asked the informant to return to Steward’s apartment to retrieve a sample of the chemicals. The informant returned to the apartment and asked Steward if she could take a sample of the chemicals and Steward consented. The informant left the apartment after getting a sample from the back of the'Blazer and delivered it to agent Johnson. At about noon, agent Johnson gave the sample to a detective from the Washoe County Consolidated Narcotics Unit (“CNU”) and turned the case over to CNU.
CNU immediately set up surveillance of Steward’s apartment. Sometime between 4:00 and 5:00 p.m., CNU detectives saw Steward leave his apartment in the Blazer with two other persons. The detectives followed the Blazer to a shopping center in Lem-mon Valley. After stopping briefly at the shopping center, the Blazer continued on to a trailer house belonging to Chris Nunez. A CNU detective observed the Blazer pull behind the trailer to a storage shed. Several people then unloaded the boxes from the Blazer into the shed. After about fifteen minutes, Steward’s two companions drove away in the Blazer. The police arrested them at a convenience store a few minutes later.
After the Blazer left the trailer, a police SWAT team raided the trailer and served a search warrant. When the police entered the trailer, they found Steward sitting at the kitchen table. The police discovered methamphetamine powder in a shoe box and in several plastic baggies sitting on the table in front of Steward. They also found drug paraphernalia on the table with the powder including scales, razor blades, and straws. Steward informed the police that he was aware that the powder was methamphetamine. The police located Nunez in a back bedroom.
*834 The police searched the storage shed and found the boxed glassware. A criminologist testified at the hearing that the sample the confidential informant had taken from the back of the Blazer was waste product from methamphetamine manufacturing. The criminologist found a trace of methamphetamine in the waste product but it was not enough to extract for personal use.
The state’s original complaint charged Steward with two counts of possession of a controlled substance for the powder found on the kitchen table, two counts of possession of a controlled substance for the waste product the police obtained from the glassware in the storage shed, one count of possession of a controlled substance for the sample the confidential informant took from the Blazer and one count of unlawful manufacturing of methamphetamine for the glassware found in the storage shed. The justice’s court found that probable cause did not exist to bind Steward over to the district court on the possession charges based on the waste product because the waste product was not a marketable or quantifiable controlled substance.[1] The justice’s court also based the dismissal of these counts on the informant’s testimony that Steward informed her that he did not know what the waste product was.
The justice’s court also refused to bind Steward over on the manufacturing charge because the glassware only constituted a partial lab and the state presented no evidence that Steward had operated a methamphetamine lab. The justice’s court, however, found probable cause to bind Steward over on the counts for possession of the methamphetamine powder found on the kitchen table. The justice’s court found that Steward had constructive possession of the powder because Steward knew the content of the powder and the drugs were sitting on the table before him.
Steward subsequently filed a petition for a writ of habeas corpus in the district court. Steward argued in his petition that probable cause did not exist to bind him over on the possession *835 charges. Steward contended that his mere presence at the trailer was insufficient to establish that he had constructive possession of the methamphetamine powder.[2]
The district court granted Steward’s petition and dismissed the charges by court order on February 26, 1993. The district court found that this was a mere presence case, and therefore probable cause did not exist to bind Steward over for trial. This appeal followed.

Discussion

“Absent a showing of substantial error on the part of the district court in reaching [probable cause] determinations, this court will not overturn the granting of pretrial habeas petitions for lack of probable cause.” Sheriff v. Provenza, 97 Nev. 346, 347, 630 P.2d 265 (1981). This court has held that a suspect may not be bound over for trial unless the state demonstrates probable cause that the suspect committed the charged crime. Sheriff v. Richardson, 103 Nev. 180, 734 P.2d 735 (1987). Probable cause to support a criminal charge “[m]ay be based on slight, even ‘marginal’ evidence, . . . because it does not involve a determination of the guilt or innocence of an accused.” Sheriff v. Hodes, 96 Nev. 184, 186, 606 P.2d 178, 180 (1980) (citations omitted). “To commit an accused for trial, the State is not required to negate all inferences which might explain his conduct, but only to present enough evidence to support a reasonable inference that the accused committed the offense.” Kinsey v. Sheriff, 87 Nev. 361, 363, 487 P.2d 340, 341 (1971); see also Sheriff v. Milton, 109 Nev. 412, 851 P.2d 417 (1993).
The crime of possession of a controlled substance required the state to establish probable cause that Steward had actual or constructive possession of the methamphetamine powder found on the table at Nunez’ trailer. See Oxborrow v. Sheriff, 93 Nev. 321, 322, 565 P.2d 652, 653 (1977). Steward did not have actual possession of the powder because it was on the table and not on his person. Thus, the state had the burden of establishing probable cause that Steward had constructive possession of the powder.
A defendant has constructive possession of a controlled substance “only if she [he] maintains control or a right to control the *836 contraband.” Glispey v. Sheriff, 89 Nev. 221, 223, 510 P.2d 623, 624 (1973). Further, “possession may be imputed when the contraband is found in a location which is immediately and exclusively accessible to the accused and subject to her [his] dominion and control.” Id.
In this case, the state presented at least slight or marginal evidence that Steward had constructive possession of the powder on the table. The powder was accessible to Steward as it was lying in front of him on the table. Steward also informed the police that he knew that the powder was methamphetamine.
Whether the powder was subject to Steward’s dominion and control is a closer question. Steward argued in the district court that he did not have dominion or control over the powder. He contended rather that he was merely present at the trailer when the police happened to find drugs. Steward argued further that his involvement in transporting the methamphetamine lab was a separate and distinct transaction and was therefore completely unrelated to the drugs found on the table. Further, the partial lab Steward transported had no apparent connection to the drugs seized because it was not capable of producing methamphetamine powder. Steward also notes that he was in the trailer only a few minutes before the police raided the trailer. There was, therefore, little time for him to exercise any control over the drugs.
We have previously held that ‘“mere presence in the area where the narcotic is discovered or mere association with the person who does control the drug or the property where it is located, is insufficient to support a finding of possession.’” Konold v. Sheriff, 94 Nev. 289, 290, 579 P.2d 768, 769 (1978) (quoting United States v. Stephenson, 474 F.2d 1353, 1355 (5th Cir. 1973)). In Konold, we ruled that a small amount of marijuana found in a pipe located in a room where several persons were present was insufficient by itself to establish constructive possession. Id.; see also Oxborrow v. Sheriff, 93 Nev. 321, 565 P.2d 652 (1977) (guest’s presence in a residence where marijuana was found was insufficient by itself to establish possession); State v. Luchetti, 87 Nev. 343, 486 P.2d 1189 (1971) (teenagers merely present at a party where drugs were seized did not have constructive possession).
This case is not a mere presence case. The testimony presented at the preliminary hearing indicates that Steward was involved in the production and distribution of methamphetamine. The testimony of the informant indicates that Steward played a significant part in acquiring materials necessary for the illegal production of drugs. Further, although Steward was in the trailer only a few minutes before the police arrived, he was able to inform the police that the powder on the table was methamphetamine.
*837 Of course, at this stage of the proceedings, we express no opinion respecting Steward’s ultimate guilt or innocence. Nonetheless, the State’s evidence respecting Steward’s knowledge of the content of the powder and his involvement in the transportation of the partial methamphetamine lab is sufficient to support a finding of probable cause to believe that Steward was more than merely present at the trailer. We therefore conclude that the state has met its burden of presenting slight or marginal evidence of probable cause to believe that Steward had constructive possession of the methamphetamine powder. Accordingly, we reverse the order of the district court granting Steward’s pretrial petition for a writ of habeas corpus, and remand this matter to the district court with instructions to reinstate the charges.

The justice’s court based this determination on an opinion from this court and opinions from the federal courts that have indicated that although filler substances used to dilute a controlled substance should be included in determining the quantity of the controlled substance, unmarketable substances should not be included in the quantity. See United States v. Acosta, 963 F.2d 551, 554-55 (2nd Cir. 1992) (creme liqueur in which cocaine was transported not included because cocaine was not marketable unless separated from creme liqueur); United States v. Rolande-Gabriel, 938 F.2d 1231, 1234, 1237 (11th Cir. 1991) (liquid in which cocaine transported not included because cocaine not marketable unless extracted from liquid); Sheriff v. Hughes, 99 Nev. 541, 542-43, 665 P.2d 242, 243 (1983) (cut used to dilute heroin included because heroin marketed this way); see also Chapman v. United States, 498 U.S. 1011, 111 S.Ct. 1919, 1926 (1991) (paper on which LSD is impregnated included because LSD is sold with the paper).

Steward also contended that the new information was insufficiently detailed to give him adequate notice of the charges. This issue is not before this court on appeal as it was not a basis for the district court’s decision on Steward’s habeas corpus petition. The district court also correctly noted that although the information was deficient, the state could amend it. See NRS 173.095 (court may permit amendment of information at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced).